In the Matter of ROYAL BUSINESS SCHOOL, INC., Appellant, v NEW YORK STATE DEPARTMENT OF EDUCATION et al., Respondents.

Third Department, October 20, 1988

### APPEARANCES OF COUNSEL

*Gleason, Dunn, Walsh & O'Shea (Brendan C. O'Shea* of counsel), for appellant.

*Robert Abrams, Attorney-General (Leslie B. Neustadt* of counsel), for respondents.

### OPINION OF THE COURT

MERCURE, J.

Petitioner, a private business school operating in New York City, participated in the Tuition Assistance Program (hereinafter TAP) administered by respondent Higher Education Services Corporation (hereinafter HESC). In order to be eligible for TAP, a student must pursue a program of study at an institution approved by respondents Commissioner of Education (hereinafter the Commissioner) and State Education Department (hereinafter SED) and must achieve satisfactory academic progress (Education Law §§ 604, 666 [2]; 8 NYCRR 145-2.2). Additionally, in order to be an approved institution, the faculty members of the institution must meet the standards set forth by SED in its regulations, promulgated at 8 NYCRR 126.6.

Pursuant to Education Law § 665 (3) (b), respondent Department of Audit and Control (hereinafter Audit and Control) conducted an audit, utilizing variable, statistical sampling techniques, to verify the accuracy of petitioner's certification of students for TAP awards by examining 99 of the 1,954 awards made for the 1982-1983 academic year and 100 of the 2,186 awards made for the 1983-1984 academic year. The initial report found that all 199 of the students examined

were improperly certified by petitioner to receive TAP awards, based primarily upon the following factors: (1) students were taught by unlicensed or unlicensable faculty members, (2) students were not in good academic standing, and (3) students were not in full-time attendance. Petitioner contested these findings, responding with documentation of the qualifications of several of its teachers and arguing that many of the students in question were in good academic standing.

Ultimately, after consideration of petitioner's further submissions, Audit and Control disallowed 64 awards totaling $36,272 for 1982-1983 and 58 awards totaling $38,678 for 1983-1984. A statistical projection of audit disallowances to the entire student population resulted in a total disallowance of $1,329,320 for the two academic years and a demand for HESC's recoupment of that sum. Petitioner commenced this CPLR article 78 proceeding, contending that Audit and Control's determination was arbitrary and capricious and should be annulled. Supreme Court dismissed the petition and petitioner appeals.

■ Petitioner's initial contention is that respondents' disallowances for lack of qualifications of petitioner's teachers were arbitrary and capricious. We disagree. In this connection, it should be noted that Education Law § 5002 (3) and 8 NYCRR 126.6 (j) require a registered business school to obtain a license for each teacher within 60 days after the date of employment. This being the case, licensure of the subject instructors should have been completed long before the audit was conducted. Petitioner did not dispute its failure to conform to the licensing requirements but nonetheless sought and was granted an opportunity to obtain after-the-fact licensure of its instructors, retroactive to the audit period. After review of petitioner's documentation, SED still determined that 30 individuals were either not licensable or not licensed for the courses they taught.

Petitioner's argument that respondents failed to detail the administrative standards they relied upon in making determinations regarding teacher licensability and that the wrong standards were applied lacks merit. Respondents advised petitioner that licensability was governed by the provision of 8 NYCRR 126.6 (former [f]) (as amended Sept. 27, 1976) that "[t]eachers * * * in registered private business schools shall have completed professional preparation at least equal to that required of teachers of equivalent curricula or courses in public secondary schools to qualify for a license". Because 8

NYCRR 80.5 sets forth the requirements for certification of public business education teachers, the further provision of 8 NYCRR 126.6 (former [f]) that "[i]n the event there are no requirements for teachers in public secondary schools, the requirements of subdivision (e) of this section shall apply" had no application. Last in this regard, respondents were not required to apply the provision of 8 NYCRR 126.6 (k) that "[a] person who holds a degree from an acceptable institution of college level, with an acceptable major in the subject which the candidate desires to teach, *may* be deemed to have met the education and professional training requirements for a license" (emphasis supplied). SED's interpretation of the licensing requirements contained in its regulations was reasonable and will not be set aside *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 231; *Matter of Elmira Business Inst. v New York State Dept. of Educ.,* 116 AD2d 133, 139-140, *affd* 70 NY2d 758). Clearly, it was petitioner's flagrant disregard for the requirement that teachers be licensed within 60 days following their employment and not respondents' actions which caused disallowance of the subject instructional hours.

Next, petitioner contends that the determination of the final audit report concerning program pursuit and satisfactory academic progress is arbitrary and capricious and is unsupported by the facts. In order to be eligible for TAP awards, a student must (1) pursue the program of study in which he or she is enrolled, and (2) make satisfactory academic progress toward the completion of the program's requirements (8 NYCRR 145-2.2). Program pursuit is governed by 8 NYCRR 145-2.2 (b) (3), which provides that a student shall be deemed to be pursuing the approved program if during each term of study in the first year for which an award is being received, he receives a passing or failing grade in at least one half of the minimum amount of study required to constitute full-time study (8 NYCRR 145-2.2 [b] [3] [i]). The required proportion of passing or failing grades increases in the second and subsequent years of study (8 NYCRR 145-2.2 [b] [3] [ii], [iii]).

A number of students whose records were audited had taken a leave of absence for a full term of the subject school year, and Audit and Control disallowed the TAP awards for the following term as a result. We reject petitioner's contention that 8 NYCRR 145-2.2 (b) (3) can be satisfied for a given school year even when a student misses an entire term of study so long as he completes all of his course work in another term of the same school year, the net rate of completion being

the required 50%. This argument entirely ignores the introductory language of 8 NYCRR 145-2.2 (b) (3) (i), (ii) and (iii) "during each term of study". Further, petitioner's contention that the one-time "TAP waiver" provision of 8 NYCRR 145-2.2 (b) (5) permitted the subject leave of absences is incorrect, particularly in view of petitioner's failure to certify or maintain documentation that such waiver was in the best interests of the individual students, as required by that regulatory provision. Respondents' interpretation of 8 NYCRR 145-2.2 is clearly rational and will be upheld (see, *Matter of Bradford Cent. School Dist. v Ambach,* 56 NY2d 158, 165).

8 NYCRR 145-2.2 (b) (4) provides that in order to determine whether a student receiving an award is making satisfactory progress toward the successful completion of his program's academic requirements, each institution shall establish and apply a "standard of satisfactory academic progress", which shall be approved by the Commissioner prior to its implementation and prior to any changes. In assessing the students' academic progress, Audit and Control utilized the standard of satisfactory academic progress contained in petitioner's 1981 catalogue, since that was the only standard which SED could document had been approved. Petitioner contends, however, that another approved standard existed and should have been applied but it was somehow lost by SED and petitioner did not retain a copy of the standard or evidence of SED approval of it. In this connection, it need merely be noted that it is petitioner's responsibility to keep its academic policy on file for seven years (see, 8 NYCRR 145-2.2, 126.11). The further contention that SED should, as an alternative, have utilized the standard contained in the 1982 catalogue fails to consider the fact that that standard was never approved under 8 NYCRR 145-2.2 (b) (4). Approval of a catalogue is not tantamount to approval of the courses or the academic standards listed therein.

Last, since there were no disputed factual allegations raised before Supreme Court, it was not required to conduct an evidentiary hearing.

KANE, J. P., CASEY, WEISS and MIKOLL, JJ., concur.

Judgment affirmed, without costs.