In re TTS, INC., Debtor.

TTS, INC., Plaintiff,

v.

CITIBANK, N.A., and Jarvis J. Slade, Defendants.

Bankruptcy No. 89–414.
Adv. No. 89–90.

United States Bankruptcy Court, D. Delaware.

March 8, 1991.

---

Stephen W. Armstrong, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., and Thomas Ambro, Richards, Layton & Finger, Wilmington, Del., for debtor/plaintiff.

Peter J. Walsh, Bayard, Handelman & Murdoch, P.A., Wilmington, Del., for defendant Jarvis J. Slade.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

This is the court's opinion on cross-motions for summary judgment. TTS, Inc. sued Citibank, N.A. and Jarvis J. Slade. TTS seeks a declaration that property held by Citibank as escrow agent is property of the bankruptcy estate and asks that Citibank and Slade be directed to turn that property over to the estate of TTS, Inc.

### I. *Facts*

The following facts are not in dispute. TTS, Inc., formerly named Computer Investors Group, Inc., is a New York corporation. Slade is a merchant banker who resides and works in New York.

On October 13, 1975, TTS employed Slade as an executive of the corporation. A written employment agreement provided that TTS would pay Slade $45,000 per annum and an additional $25,000 per year of employment in retirement benefits pursu-

ant to arrangements the parties would subsequently agree upon.

These arrangements were detailed in an escrow agreement embodied in two documents dated December 22, 1975. The agreement required TTS to deposit $6,250 into an escrow account for every three-month period of employment ($25,000 per year) and allowed the escrow agent to invest the funds in designated markets. In addition, the escrow agent could invest funds in other markets jointly designated by TTS and Slade. The agreement further provided for disbursement from the escrow account to either Slade, his legal representative or designated third parties upon the agent's receipt of a certificate of Slade's retirement or death. The agent could pay a portion of the escrow funds to TTS only if TTS certified that Slade had breached either a five-year covenant not to compete, his duty to advise TTS on business matters, or any of the terms of the employment agreement. The payment to TTS would reflect TTS' actual damages caused by the breach.

Slade's employment with TTS terminated on September 20, 1976. On that date, the parties executed a new employment agreement whereby Slade would provide consulting services to TTS for two years. The consulting agreement also stated that TTS' contributions to the escrow fund would stop, but that the escrow agreement would otherwise remain in effect. TTS had deposited a total of $25,000 into the fund.

TTS ceased business operations in December 1989. It filed a Chapter 11 petition on July 14, 1989, and a liquidating plan was confirmed on December 5, 1990. As of April 30, 1990, the escrow fund balance was $462,003.32.

## II. The Merits of TTS's Complaint

On cross-motions for summary judgment, the court must determine whether one of the parties is entitled to judgment as a matter of law based on the undisputed facts. E.g., Manetas v. International Petroleum Carriers, Inc., 541 F.2d 408, 413 (3rd Cir.1976). TTS contends it is entitled to summary judgment because:

1. The escrow account is "property" within the meaning of 11 U.S.C. § 541 and thus part of the debtor's estate; or, in the alternative,

2. The escrow agreement is an "executory contract" within the meaning of 11 U.S.C. § 365, and this court should grant TTS' request in its complaint to reject the contract.

In opposition, Slade contends the escrow account is not "property", nor is the the escrow agreement "executory". Slade concludes that, as a matter of law, TTS' estate is not entitled to the escrow account.

### A. The Escrow Account is Not Estate Property

■ TTS proffers several arguments why the escrow account is property of its estate under § 541 of title 11, United States Code.

First, TTS refers to the escrow agreement language:

> ... nor shall Mr. Slade or the Company [TTS] have any right to alienate, hypothecate, assign or transfer his, or its, interest, except by way of transfer upon death or otherwise by operation of law. (emphasis added).

TTS argues that the Bankruptcy Code is the law that operates to include the escrow fund within the estate.

There is nothing in the record to suggest that the parties ever considered the effect of this language in the context of a bankruptcy let alone that it was the parties' intent that this language meant the escrow account would become property of TTS' estate. Moreover, if Chapter 11 of the Code did operate to include the fund as part of the estate, the existence of the contractual language would be surplusage. TTS' argument merely begs the question of whether the escrow account is property that is part of the estate as a matter of bankruptcy law.

The Bankruptcy Code does not operate to include property in the estate unless the debtor has a legal or equitable interest in the property. The Code itself does not determine the existence of a legal or equitable interest in property—reference to

state law is required. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914; 918, 59 L.Ed.2d 136 (1979). TTS' second argument recognizes these principles and deals with the extent and effect of its property interest under state law.

TTS correctly states that the debtor's estate is comprised of all property in which the debtor has a legal or equitable interest. 11 U.S.C. § 541(a). Slade responds that property in which the debtor holds only legal title and not an equitable interest becomes property of the estate only to the extent of the debtor's legal title to such property but not to the extent of any equitable interest in such property that the debtor does not hold. § 541(d). The parties agree that New York law determines the extent of TTS' property interest; however, they disagree whether the extent of TTS' property interest entitles it to the escrow account.

■ Under New York law, for an escrow to be valid, the delivery of property must be irrevocable. *Matter of O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 667 (Bankr.S.D. N.Y.1985). The retention of a contingent right to repossess the property if a condition the escrow agreement specifies does not occur is not the same as retaining a right to revoke. *Id.* TTS does not suggest it has the power to revoke the escrow or that the escrow is somehow otherwise invalid.

■ Legal title to property the grantor places in a valid escrow remains with the grantor until the occurrence of the conditions the escrow agreement specifies. *Id.* Here, at the time TTS filed its Chapter 11 petition, Slade had not satisfied the condition of presenting a certificate of retirement or death to Citibank. Hence, TTS has legal title to the escrow account. However, Slade has an equitable interest in the escrow account that will entitle him to complete title upon performance of the above condition. *Id.* at 667.

The only remaining question is whether TTS' legal interest suffices to include the equitable interest in the escrow account in the estate. The answer is no. *Matter of Spencer*, 115 B.R. 471, 483 (D.Del.1990).

Courts have applied this analysis on several occasions to exclude money held in escrow from the bankruptcy estate. *O.P.M. Leasing*, 46 B.R. 661, 667–68 (collecting cases).

TTS also argues that it retains control over the escrow account. Regardless of the factual merits of this argument, TTS fails to legally connect this argument with the issue of whether the escrow account is part of the estate under the Bankruptcy Code and New York State law. TTS' citation to various tax cases is equally irrelevant.

**B. The Escrow Agreement is Not Executory**

■ TTS' other ground in support of its motion for summary judgment posits that the escrow agreement is executory. Slade disagrees with this characterization of the contract.

■ An executory contract is a contract under which the obligation of both the debtor and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach. *Sharon Steel Corp. v. National Fuel Gas Distrib.*, 872 F.2d 36, 39 (3rd Cir.1989). Since the formation of the escrow agreement in 1975, TTS performed its deposit obligations and consented to investments Slade suggested to the escrow agent. Slade also complied with all his obligations the escrow agreement required prior to his retirement or death.

TTS argues both parties have several remaining obligations. TTS first refers to its obligation to pay taxes. This obligation does not arise out of the escrow agreement but from federal tax laws. TTS also refers to a duty to pay the fees and expenses of the escrow agent; however, these monies are deducted directly from the escrow account. Finally, TTS argues it has an ongoing duty to consent to Citibank investments. The agreement allows the escrow agent to make two types of investments: those in designated markets and those "as *may be* designated in writing ... jointly by [TTS] and Mr. Slade." (emphasis added). Thus, TTS has no obligation to consent to

Citibank investments, and TTS' refusal to consent to an investment Slade suggests would hardly constitute a material breach. *See Matter of GEC Industr.*, 107 B.R. 491 (Bankr.D.Del 1989).

TTS avers two continuing obligations of Slade under the escrow agreement. The first is that Slade is obliged to advise TTS on business matters. Slade argues this duty under the escrow agreement was removed when the parties executed the September 20, 1976, employment agreement. The court need not rule on the merits of Slade's contract argument.

Slade has attached an affidavit with his motion for summary judgment stating he will become 65 years old in February 1991 and at that time he will retire. TTS does not dispute these facts. Under these circumstances, Slade's duty, assuming it exists, to advise TTS cannot make the escrow agreement executory.

The second obligation TTS relies upon is Slade's duty to certify his retirement to TTS. This is an administrative, not a material requirement of the escrow agreement. *GEC Industr.*, 107 B.R. 491.

The escrow agreement is not executory. In light of this holding, it is not necessary to reach Slade's other arguments concerning the second ground for TTS' motion. TTS' estate is not entitled to the escrow account.

III. *Conclusion*

An order in accordance with this Memorandum Opinion is attached.

### ORDER

AND NOW, March 8, 1991, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. TTS, Inc.'s motion for summary judgment is DENIED.

2. Jarvis J. Slade's motion for summary judgment is GRANTED and the complaint is DISMISSED.