In re ROYAL BUSINESS SCHOOL,
INC., Debtor.

Robert J. MUSSO, as Trustee for
the Estate of Royal Business
School, Inc., Plaintiff,

v.

NEW YORK STATE HIGHER EDU-
CATION SERVICES CORPORATION
and Key Bank, Defendants.

Bankruptcy No. 188–82869–260.
Adv. No. 189–0129.

United States Bankruptcy Court,
E.D. New York.

Aug. 4, 1993.

Robert J. Musso, Brooklyn, NY, Trustee.

Finkel Goldstein Berzow & Rosenbloom, New York City by Kevin J. Nash, Gary I. Selinger, for plaintiff, Robert J. Musso, Chapter 7 Trustee for Estate of Royal Business School, Inc.

Robert Abrams, Atty. Gen., New York City by David S. Cook, for defendant, New York State Higher Educ. Services Corp.

Center for Law and Social Justice Medgar Evers College/C.U.N.Y., Brooklyn, NY by Reginald A. Boddie, Dianne E. Dixon, Esmeralda Simmons, for Students.

Hiscock & Barclay, Albany, NY by Robert G. Qulia, for Key Bank.

Office of United States Trustee, Garden City, NY by Alfred M. Dimino.

### DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

This is an adversary proceeding in which the plaintiff, Robert J. Musso, Esq., as the Chapter 7 Trustee (the "Trustee"), seeks the turnover of monies held in a joint account of Royal Business School, Inc. (the "Debtor") and New York State Higher Education Services Corporation ("NYSHESC") pursuant to 11 U.S.C. §§ 541[1] and 542[2].

This matter comes before the Court on the Trustee's motion for summary judgment and NYSHESC's cross-motion for summary judgment, pursuant to Fed. R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed.R.Bank.P. 7056. For the reasons hereinafter set forth, NYSHESC's cross-motion for summary judgment is granted and the Trustee's motion for summary judgment is denied.

### FACTS

Prior to filing its petition under Chapter 11 of the Bankruptcy Code, the Debtor operated various private business training schools registered in New York. The Debtor participated in the New York State Tuition Assistance Program ("TAP") which enabled it to receive funding for students under various loan programs. The TAP is administered by the New York State Higher Education Services Corporation ("NYSHESC") with the funding subject to review by the New York State Department of Audit and Control ("NYSDAC").

In 1986, NYSDAC performed an audit of the Debtor's TAP financing. It examined the records of 99 of the 1,954 TAP awards made for the 1982–83 academic year and 100 of the 2,186 awards made for the 1983–84 academic year. In its April 9, 1986, report, NYSDAC determined that 122 of the student awards which it inspected were improperly certified by the Debtor as eligible for TAP monies (64 from the 1982–1983 academic year and 58 from the 1983–84 academic year). This determination was based on the following violations of NYSHESC's requirements: (1) the students were

---

1. Section 541 of the Bankruptcy Code defines property of the bankruptcy estate as all the legal and equitable interests of the debtor in property as of the commencement of the case.

2. Section 542 requires, with certain exceptions not applicable here, that anyone holding property of the estate deliver such property to the trustee. *See In re 100 Lindbergh Blvd. Corp.,* 128 B.R. 53, 56 (Bankr.E.D.N.Y.1991).

taught by unlicensed faculty members; (2) the students were not in good academic standing; and (3) the students were not in full-time attendance. After extrapolating these figures to the student body, NYSDAC concluded that the Debtor owed refunds for improper TAP payments in the amount of $1,329,320.00 ($617,752 for the 1982–1983 academic year and $711,568 for the 1983–1984 academic year). The Debtor contested these findings.

In a letter dated April 25, 1986, NYSHESC demanded repayment of the $1,329,320 from the Debtor. In response, the Debtor sent a letter dated May 16, 1986, to NYSHESC challenging the refund demand. The Debtor also filed an Article 78[3] proceeding in the New York State Supreme Court of Albany County, contending that NYSDAC's determination was arbitrary, capricious and should be annulled.

On August 26, 1986, the Debtor and NYSHESC entered into a written agreement (the "Agreement") which allowed the Debtor to continue to receive TAP monies as long as it repaid the amount due under the NYSDAC audit.[4] Under the agreement, the Debtor would, subject to the exhaustion of any administrative and judicial remedies, pay in escrow to NYSHESC $1,329,320 in the following manner: the Debtor would (1) endorse to NYSHESC $100,683.95 in TAP checks; (2) pay to NYSHESC $99,316.05 on October 1, 1986; and (3) pay to NYSHESC $1,129,320 in sixty monthly installments of $18,822 on the 15th of each month beginning November, 1986. Pl.'s Mot.Summ.J.Ex. C. at 2–3.

The Debtor made monthly payments from November, 1986, through June, 1988. Thereafter, the Debtor failed to submit a check by the July 15, 1988, deadline. NYSHESC then notified the Debtor to cure the default within 14 days of the receipt of the notice. On August 5, 1988, NYSHESC received a check from the Debtor dated August 4, 1988. However, this check bounced as it was drawn on an account at

National Westminster Bank which the Debtor had previously closed. In the interim, the Debtor paid its August, 1988, payment. As a result of the July default, NYSHESC, on September 8, 1988, exercised its option pursuant to ¶ 4 of the Agreement and accelerated the entire outstanding balance. NYSHESC also suspended the Debtor from any further participation in the TAP program.

Pursuant to the Agreement, all monies paid to NYSHESC by the Debtor "shall be held in an escrow account maintained by the Corporation in a Key Advantage Account at Key Bank, N.A." ("Key Bank"). Paragraph 12c of the Agreement provides:

> [i]n the event that [the Debtor] exhausts its administrative and judicial remedies or chooses not to pursue such remedies, and remains liable to [NYSHESC], the amount then in the escrow account shall be withdrawn and applied by [NYSHESC] to such liability.

Pl.'s Mot.Summ.J.Ex. C. at 10.

Paragraph 14 of the Agreement further states:

> [a]nything to the contrary herein not withstanding in the event there is a judicial determination of the amount due to [NYSHESC] from [the Debtor] as a refund under the aforesaid audit, or a settlement establishing such amount all further payments required to be made by [the Debtor] under this agreement shall be installment payments payable on account of such refund liability and not escrow payments, and wherever in this agreement reference is made to an escrow payment or the outstanding balance remaining under this agreement, such reference shall be deemed to refer respectively to an installment payment on account of the refund or the remaining balance of the refund that is due.

*Id.* at 10–11.

Pursuant to the Agreement, NYSHESC deposited the checks and payments re-

---

**3.** An Article 78 proceeding is designed to provide review of judicial, quasi-judicial or administrative determinations.

**4.** The Agreement explicitly states that one of the reasons for which NYSHESC agreed to continue to provide TAP funding was to insure the ongoing education of the students.

ceived from Royal into an account (the "Key Account") which NYSHESC had established at Key Bank.[5] A signature card was provided to Key Bank, with two NYSHESC officers being the only individuals authorized to make withdrawals from the Key Account.[6] Key Bank was also furnished with a copy of the Agreement.

Apparently, NYSHESC had some concerns regarding the security of the escrow account, specifically whether the transfer of money by the Debtor into the escrow could be avoided under § 549 of the Bankruptcy Code. Cook Aff.Ex. 1 at 1. In response to NYSHESC's concerns, O'Connell & Aronowitz, attorneys for Royal, in a letter dated April 15, 1988, stated that in light of certain New York bankruptcy court decisions:

> any funds transferred into the escrow account by Royal ... prior to the 90–day preference period, could not be avoided by the Bankruptcy trustee. Therefore, the funds remain securely in escrow pending the outcome of the proceedings between Royal ... and [NYSHESC], relative to the TAP audit.

> We therefore submit that the position of NYSHESC relative to the funds in the escrow account is undisputed....

Cook Aff.Ex. 4 at 2.

On August 5, 1987, the Supreme Court upheld NYSDAC's final audit report. *Royal Business School, Inc., v. N.Y. Dep't. of Educ.*, No. ST0662, Cal. No. 2 (August 5, 1987). Thereafter, the Debtor appealed.

On September 16, 1988, a separate class action was brought in the United States District Court for the Eastern District of New York, against the Debtor by former students (the "Students") seeking injunctive and monetary relief on the grounds that the school had breached various contracts and engaged in racketeering, fraud, and other illegal activities. *Cynthia A.*

*Gamble, et. al. v. Royal Business School, Inc., et. al.,* Index No. 88–2875 (E.D.N.Y. September 16, 1988). This case is still pending.

On October 18, 1988, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. Two days later, on October 20, 1988, the Appellate Division, Third Department affirmed the Article 78 decision in favor of NYSHESC. *Royal Business School, Inc. v. N.Y. Dep't. of Educ.*, 141 A.D.2d 170, 534 N.Y.S.2d 489 (N.Y.App.Div.1988).

On April 11, 1989, this case was converted to one under Chapter 7 and Robert J. Musso was appointed as Trustee for the Debtor's estate. He then commenced the current adversary proceeding, pursuant to §§ 541 and 542 of the Bankruptcy Code, against NYSHESC and Key Bank seeking the remittance of the funds in the Key Account.

On October 30, 1989, this Court entered an order allowing the Students to intervene as third party plaintiffs since their interests could be adversely affected by the outcome of this adversary proceeding.[7] Thereafter, the Trustee filed a motion for summary judgment. Subsequently, NYSHESC filed its cross-motion for summary judgment.

The Trustee maintains that the Key Account is an escrow account inasmuch as the Agreement clearly states that the funds were being held in escrow, subject to the exhaustion of administrative and judicial review of the audit findings. Moreover, he argues that since the appeal of the Article 78 proceeding was stayed by the filing of the Chapter 11 petition, the money in the Key Account should be considered property of the estate and turned over to him.

In contrast, NYSHESC maintains that the money in the Key Account is not an

---

5. The Key Account was one of several accounts established by NYSHESC which were used to deposit refunds of TAP funds due from other institutions. Def's. Cross–Mot. Summ.J. at 8.

6. According to an attorney for Key Bank, NYSHESC, as depositor, could have made withdrawals from the Key Account without limita-

tion as the Agreement did not create any conditions for withdrawal which could be enforced by Key Bank. Cook Aff.Ex. 1 at 2.

7. The Students' ability to execute a judgment in District Court is contingent upon whether the money in the Key Account is given to the Debtor's estate.

escrow account and therefore it is not property of the estate.[8] It characterizes the Key Account as an interest bearing account which was under its sole control. Furthermore, NYSHESC argues that the Appellate Division was not stayed under § 362 of the Bankruptcy code from issuing its decision on the appeal of the Article 78 proceeding.

## DISCUSSION

A motion for summary judgment is governed by Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7056, which provides in pertinent part:

[T]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56.

■ In ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastman Mach. Co. v. United States,* 841 F.2d 469, 473 (2d Cir.1988); *In re Sapru,* 127 B.R. 306, 319 (Bankr.E.D.N.Y.1991). The court must deny summary judgment where there is a genuine issue as to any material fact, and grant summary judgment where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Anderson,* 477 U.S. at 247–52, 106 S.Ct. at 2506–11; *Hamilton v. Smith,* 773 F.2d 461, 466 (2d Cir.1985); *In re Kenston Management Co.,* 137 B.R. 100, 108 (Bankr.E.D.N.Y.1992).

■ The movant bears the burden of proving the absence of any genuine issue as to all material facts which entitle him to summary judgment. *Sapru,* 127 B.R. at 319; *In re F & L Plumbing & Heating Co.,* 114 B.R. 370, 374 (E.D.N.Y.1990). Once this initial burden is met, the opposing party must not only set forth specific facts showing there is a genuine issue for trial, but also that the disputed fact is material. *In re Gen. Am. Communications Corp.,* 130 B.R. 136, 152 (S.D.N.Y. 1991); *F & L Plumbing,* 114 B.R. at 374. Therefore, the opposing party may not merely rely upon the contentions of its pleadings, but must produce significant evidence to support its position. *Gen. Am. Communications,* 130 B.R. at 152. *See also First Nat. Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569, *reh denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *United States v. Pent–R–Books, Inc.,* 538 F.2d 519 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

■ In addition, when determining whether there is a genuine issue of material fact, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). As the Supreme Court stated in *Anderson v. Liberty Lobby, Inc.:*

[T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other[,] but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence

---

**8.** NYSHESC also argued that it is immune from suit in this adversary proceeding based upon the doctrine of sovereign immunity. In light of the Court's conclusion, there is no need to address NYSHESC's claim of sovereign immunity.

that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it.... *Improvement Co. v. Munson,* 14 Wall. 442, 228 [20 L.Ed. 867] (1872)."

*Anderson,* 477 U.S. at 252, 106 S.Ct. at 2516.

█ A motion for summary judgment will be denied "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances...." *In re Chas P. Young Co.,* 145 B.R. 131, 135–136 (Bankr.S.D.N.Y. 1992) (quoting *In re Combs,* 40 B.R. 148, 151 (Bankr.W.D.Va.1984)). Therefore, not only must there be no genuine issue of material fact, but there must also be no controversy as to the inferences to be drawn from those facts in order for summary judgment to be granted. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Schwabenbauer v. Bd. of Educ. of the City Sch. Dist. of the City of Olean,* 667 F.2d 305, 313 (2d Cir.1981). From the pleadings and supporting memoranda filed in this proceeding, it is this Court's conclusion that no genuine issues of material fact exist.

## A. The Escrow Account

The word "escrow" has been defined as:

A scroll, writing, deed, money, stock or other property delivered by the grantor, promisor, or obligor into the hands of a third person, to be held by the latter until the happening of a contingency or performance of a condition and then by him delivered to the grantee, promisee, or obligee.

*In re Lasercad Reprographics, Ltd.* 106 B.R. 793, 798 (Bankr.S.D.N.Y.1989) (quoting Black's Law Dictionary 489 (5th ed. 1979)).

█ According to New York law, the following requirements must be satisfied in order to create a valid escrow. First, the parties must agree to the terms that govern the use of the particular account.

*George A. Fuller Co. v. Alexander & Reed, Esqs.,* 760 F.Supp. 381, 386 (S.D.N.Y. 1991); *In re Pan Trading Corp.,* 125 B.R. 869, 878 (Bankr.S.D.N.Y.1991); *In re Lasercad,* 106 B.R. at 798. Second, the funds must be delivered to a third party with transfer to the grantee conditioned upon the performance of some act or the occurrence of some event. *Fuller,* 760 F.Supp. at 386. *See also In re Anthony Sicari, Inc.,* 144 B.R. 656, 660 (Bankr.S.D.N.Y. 1992), *aff'd,* 151 B.R. 60 (S.D.N.Y.1993); *Pan Trading,* 125 B.R. at 878. In order to effectuate the escrow, the agreed-upon conditions must be fulfilled. *In re Stockbridge Funding Corp.,* 145 B.R. 797, 811 (Bankr.S.D.N.Y.1992); *Sicari,* 144 B.R. at 660; *Pan Trading,* 125 B.R. at 878; *Lasercad,* 106 B.R. at 798. Only after the requisite conditions are satisfied, can an escrow be fully transferred to the grantee. *Stockbridge,* 145 B.R. at 811; *Pan Trading,* 125 B.R. at 878; *Lasercad,* 106 B.R. at 798. *See also* 55 N.Y.Jur.2d Escrow § 16 (1986).

The Trustee maintains that in light of the above, there can be no question that the Key Account is an escrow account. NYSHESC, however, argues that the Key Account is not an escrow account as it demonstrates none of the incidents of an escrow account. NYSHESC points out that the funds were not deposited into the Key Account by the Debtor but were instead turned over to NYSHESC which then made the deposits. Moreover, NYSHESC notes that Key Bank can not be considered a proper third party depository because (a) Key Bank was not a party to the Agreement and did not agree to abide by the Agreement or to act as an escrow agent; (b) no escrow fee was charged; and (c) none of Key Bank's standard escrow procedures were followed.

█ Although the mere use of the term "escrow" does not automatically create one, 55 N.Y.Jur.2d Escrow § 3 (1986), the term does indicate more clearly than any other word that the parties intended to create an escrow. *Id.* at § 4. The Agreement in question characterizes the Key Account as an escrow in at least fifteen different places. It also sets forth the vari-

ous terms and conditions of the Key Account, including the amount of the payments to be made by the Debtor and to whom and when they should be made. Moreover, the Agreement, in ¶ 12c, explicitly delineates the conditions needed to satisfy the escrow: should the Debtor exhaust its judicial remedies or simply choose not to pursue them, the funds then in the escrow account would revert to the grantee, NYSHESC.

 That NYSHESC actually deposited the funds into the account does not change the nature of the escrow. The delivery in escrow is not invalid where the grantor turns the funds over to the grantee to deliver to the depository. 28 Am.Jur.2d Escrow § 7 (1966). That Key Bank may have been unaware of the nature of the account is immaterial;[9] under New York law, no formal agreement is needed to create an escrow. Rather, "mere delivery and retention by a third party until the occurrence of a contingency or performance of a condition is necessary." *Sicari,* 144 B.R. at 660; *Lasercad,* 106 B.R. at 798. Thus, there can be no question that the Agreement between the parties was intended to, and did, create an escrow account.[10]

However, in order to determine if the escrow has been satisfied, the Court must examine whether the agreed-upon condition has been fulfilled. As noted, ¶ 12c of the Agreement provides that the funds in the escrow account are to be released to NYSHESC if, after the Debtor's exhaustion of judicial remedies, it is determined that the Debtor is liable to NYSHESC.

The Trustee asserts that the requisite condition (the exhaustion of judicial remedies) has not been fulfilled inasmuch as the automatic stay prevented the Appellate Division from issuing a ruling on the Debtor's appeal of the Supreme Court's August 5, 1988, decision. The Trustee reasons that since the requisite condition is unfulfilled, the Key account should be considered property of the estate. For its part, NYSHESC

contends that the exhaustion of judicial remedies was satisfied by the judgment of the New York Supreme Court. However, the arguments on both sides are misplaced.

 Pursuant to § 362(a)(1) of the Bankruptcy Code, the filing of a petition in bankruptcy operates as a stay of any judicial proceeding "against the debtor." 11 U.S.C. § 362(a)(1). To determine if an action was commenced against a debtor, the Court looks not at which party has appealed, but instead analyzes the debtor's status at the time the proceedings began. *Matter of Arbitration Between Barbier and Shearson Lehman Hutton Inc.,* 943 F.2d 249, 250 (2d Cir.1991); *Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d 206, 207 (2d Cir.1986); *In re Ionosphere Clubs, Inc.,* 133 B.R. 5, 7 (Bankr.S.D.N.Y.1991); *In re Carter,* 131 B.R. 4, 5–6 (Bankr. D.Conn.1991). Since the Debtor initiated the Article 78 proceeding, it does not constitute an "action against the debtor" under § 362(a)(1). Thus, the Appellate Division was not stayed from issuing its decision.

### B. Property of the Estate

Despite finding that the Appellate Division was not stayed from issuing its decision, the Court must still determine whether the escrow account is property of the estate. This is one of the more difficult questions in bankruptcy, *In re Cedar Rapids Meats, Inc.,* 121 B.R. 562, 567 (Bankr. N.D.Iowa 1990), of which courts are divided. *See In re Newcomb,* 744 F.2d 621, 627 (8th Cir.1984) (escrow funds are not property of the estate). *Contra In re Missionary Baptist Found. of Am., Inc.,* 792 F.2d 502, 506 (5th Cir.1986) (escrow funds are property of the estate).

The Trustee relies on case law from other jurisdictions, notably *In re Missionary Baptist Found. of Am., Inc.,* 792 F.2d 502 (5th Cir.1986); *In re Berkley Multi–Units,* 69 B.R. 638 (Bankr.M.D.Fla.1987) and *In re*

---

**9.** The attorneys for Key Bank admit that it was given a copy of the Agreement by NYSHESC. Cook Aff.Ex. 1 at 2.

**10.** Although NYSHESC argues that it lacks the power to enter into an escrow account, the Agreement's fifteen references to the "escrow" demonstrate otherwise.

*Flannery*, 51 B.R. 697 (Bankr.S.D.Ohio 1985), and urges this Court to find that the escrow account is property of the estate. However, inasmuch as none of these cases construed New York law, they are not controlling in this jurisdiction. For example, in *Missionary Baptist*, the lender relied on *In re O.P.M. Leasing Servs., Inc.*, 46 B.R. 661 (Bankr.S.D.N.Y.1985) for the proposition that escrow accounts may never be property of the estate. *Missionary Baptist*, 792 F.2d at 506. In deciding to the contrary, the Fifth Circuit distinguished *O.P.M.* by noting that, among other things, the *O.P.M.* court had interpreted the parties rights in accordance with New York law and terms of their contracts. *Id.* at 506. Since the Fifth Circuit was construing Texas and not New York law, it declined to follow the *O.P.M.* approach. Similarly, this Court declines to adopt the holding in *Missionary Baptist.*

The other cases are more readily distinguishable. In *Berkley*, the court based its decision on the fact that *Missionary Baptist* was the controlling law in its Circuit. *Berkley*, 69 B.R. at 642. In *Flannery*, the court determined that the escrow was property of the estate since the debtors held "a legal or equitable interest" in the escrow. *Flannery*, 51 B.R. at 700. As will be shown, this is not the case in New York.

Section 541 of the Bankruptcy Code defines property of the estate to include all legal or equitable interests of a debtor in property as of the commencement of a bankruptcy case. However, despite the broad reach of this section, *In re Nemko*, 143 B.R. 980, 986 (Bankr.E.D.N.Y. 1992), not all property interests of the debtor are intended to be included as property of the estate. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313 (1983); *In re Hooker Invs., Inc. v. Hocker*, 155 B.R. 332, 338 (Bankr. S.D.N.Y.1993). As noted by the Supreme Court, the legislative history to § 541 demonstrates that Congress intended to exclude from the debtor's estate "property of others in which the debtor had some minor interest such as a lien or bare legal title." *Whiting Pools*, 462 U.S. at 204, 103 S.Ct. at

2313; *Hooker*, 155 B.R. at 338; *In re All Chem. Isotope Enrichment, Inc.*, 127 B.R. 829, 836 (Bankr.E.D.Tenn.1991); *Cedar Rapids Meats*, 121 B.R. at 566.

In order to determine the nature and extent of the Debtor's interest in the account, the Court must look to state law. *Nobelman v. Am. Sav. Bank*, —— U.S. ——, ——, 113 S.Ct. 2106, 2108, 124 L.Ed.2d 228 (1993); *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re Lee Road Partners, Ltd.*, 155 B.R. 55 (Bankr.E.D.N.Y. 1993). In New York, as in most other states, legal title to property placed in escrow remains with the grantor pending the fulfillment of the conditions agreed upon in the escrow agreement. *Hooker*, 155 B.R. at 338; *O.P.M.*, 46 B.R. at 667. However, the deposit of property placed in escrow

> creates in the grantee such an equitable interest in the property that upon full performance of the conditions according to the escrow agreement, title will vest at once in him. Hence, although pending full performance of the conditions, the legal title remains in the grantor and is subject to ... the lien of a judgment against him to the extent of his interest therein, it has been held that such lien, obtained with notice of the escrow agreement is subject to the equity of the grantee.

28 Am.Jur.2d Escrow § 10 (1966); *accord Hooker*, 155 B.R. at 339, *O.P.M.*, 46 B.R. at 667.

Moreover, in order for an escrow to be valid, the transfer must be irrevocable. Although the grantor retains a contingent right to repossess the property if the specified condition does not occur, the property must be beyond the possession and control of the grantor while it is in the hands of the escrow agent. *Hooker*, 155 B.R. at 339; *O.P.M.*, 46 B.R. at 667. Thus, when considering preference actions, the predominant rule is that a subsequent judgment or release of escrow monies does not deprive the estate of anything of value since the debtor reserves only a contingent right to the escrowed funds. *Hooker*, 155 B.R. at 338; *In re Coco*, 67 B.R. 365, 369

(Bankr.S.D.N.Y.1986); *O.P.M.*, 46 B.R. at 668.

For these reasons, most courts considering the issue under New York law have held that escrow accounts are not property which would vest in the trustee in bankruptcy. *Sicari*, 144 B.R. at 662; *O.P.M.*, 46 B.R. at 668. *See also In re Simon*, 167 F.Supp. 214, 215 (E.D.N.Y.1958) (an escrow account is not the type of property as would vest in the trustee under the Bankruptcy Act); *In re TTS, Inc.*, 125 B.R. 411, 414 (Bankr.D.Del.1991), *aff'd*, 158 B.R. 583, 587 (D.Del.1993) (interpreting New York law and concluding that an escrow is not property of the estate). *Accord Newcomb*, 744 F.2d at 627.

In *In re Simon*, 167 F.Supp. 214 (E.D.N.Y.1958), a case decided under the Bankruptcy Act, the terms of a mortgage agreement between the debtor and the mortgagee-bank, required the debtor to deposit funds into an escrow account as further security for the bank in the event the debtor defaulted on various tax and insurance obligations. After the debtor filed for bankruptcy protection, the trustee sought an order requiring the bank to turn over the funds then in the escrow account. Following the denial of his motion by the Bankruptcy Referee, the trustee sought review by the district court. In denying the trustee's motion, the district court stated that:

> [t]he escrow account held by the bank is not such property as the trustee would be vested with under Section 70, sub. a(5) of the Bankruptcy Act. (citation omitted). The ... agreement provides that the mortgagor is to deposit the funds in the escrow account 'in order [to] more fully protect the security of the mortgage', so that those funds once deposited, are no longer within the control or jurisdiction of the bankrupt.

*Simon*, 167 F.Supp. at 215.

Similarly, in *TTS*, 125 B.R. 411 (Bankr. D.Del.1991), *aff'd*, 158 B.R. 583 (D.Del. 1993), a Delaware bankruptcy court considered whether an escrow account was prop-

erty of the estate under New York law. Under the terms of an employment contract with one of its executives, the Debtor, a New York corporation, was to deposit funds into an escrow account which would be released to the executive upon his retirement. Prior to the employee's retirement, the corporation filed a petition in bankruptcy. Although the condition of the escrow had not yet been met (retirement by the employee), the court granted summary judgment for the executive and held that since the debtor-corporation, as grantor, possessed only a legal interest in the account pursuant to New York law, the escrow account could not be considered property of the estate. *TTS*, 125 B.R. at 413.

On appeal, the district court noted that the debtor's estate possessed only legal title to the escrow since § 541 provides the debtor's estate with "no greater interest in property after filing for bankruptcy than the debtor had prior to filing." *TTS*, 158 B.R. at 587. In affirming the decision of the bankruptcy court, the district court held that the debtor's estate was not entitled to a turnover of the funds as it "would amount to an undeserved windfall for the estate of the product of ... [the executive's] work...." *Id.*

Similarly, it would be inequitable for this Court to find for the Trustee as it would allow him to succeed to an interest greater than that held by the estate and thereby diminish the grantee's equitable interest. As noted in *TTS*, § 541(a) was not designed to enlarge the debtor's rights against others beyond those existing at the commencement of the case. *TTS*, 158 B.R. at 587. *Accord In re N.S. Garrott & Sons*, 772 F.2d 462, 465–66 (8th Cir.1985). *See also* S.Rep. No. 95–989, 95th Cong., 2d Sess., and H.R.Rep. No. 95–595, 95th Cong., 2d Sess. reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5868, 6323. Clearly, § 541(a) can not be utilized to enhance the nature or extent of the debtor's interest in property as the trustee succeeds to no greater interest than that held by the debtor at the time the bankruptcy petition is

filed. *Chem. Isotope*, 127 B.R. at 837; *In re AGSY, Inc.*, 120 B.R. 313, 317 (Bankr. S.D.N.Y.1990).

 Following the filing of the petition in bankruptcy, the Debtor continued to possess only a contingent interest in the Key Account. Thus, at the time the petition was filed, NYSHESC had a superior interest in the Key Account.[11] Moreover, in accord with the decision of the Appellate Division and Royal's apparent decision not to pursue further appeals, both legal and equitable title vested in NYSHESC. *In re Intercontinental Publications, Inc.*, 131 B.R. 544, 548 (Bankr.D.Conn.1991); *O.P.M.*, 46 B.R. at 667. *See also* 28 Am.Jur.2d Escrow § 10 (1966).

This conclusion does nothing more than give effect to the intent of the parties as expressed in the Agreement. The Agreement has the same effect in bankruptcy as it did out of bankruptcy in that upon filing its petition, the Debtor continued to hold only a contingent interest in the Key Account. *See Chem. Isotope*, 127 B.R. at 838; *Cedar Rapids Meats*, 121 B.R. at 568–569. Only upon exhausting its appeals and receiving a judgment in its favor would the Debtor have any interest in the escrow. *Chem. Isotope*, 127 B.R. at 838; *Cedar Rapids Meats*, 121 B.R. at 569; *AGSY*, 120 B.R. at 317; *O.P.M.*, 46 B.R. at 668. Until such time, the Trustee has no immediate possessory interest in the Key Account within the meaning of the concept of property of the estate so as to entitle him to an order directing the turnover of any portion of the funds. *See AGSY*, 120 B.R. at 317.

## CONCLUSION

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) inasmuch as concerns the turnover of property to the estate.

2. The account at Key Bank is an escrow account and is not property of the Debtor's estate.

3. The Trustee's motion for summary judgment is denied.

4. NYSHESC's cross-motion for summary judgment is granted.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.

---

11. As noted, the Debtor acknowledged as much in its letter of April 15, 1988, which stated that it did not dispute NYSHESC's position vis-a-vis the Key Account.