In re COMPUDYNE, INC., Debtor.

Anthony S. NOVAK, Trustee, Plaintiff,

v.

Barbara PATTON, Chairperson of the State of New York Workers Compensation Board, Defendant.

Bankruptcy No. 91–24262.
Adv. No. 94–2450.

United States Bankruptcy Court,
D. Connecticut.

Dec. 26, 1995.

Ronald I. Chorches, Edward Taiman, Chorches & Novak, P.C., Wethersfield, CT, for Plaintiff.

Dennis C. Vacco, Attorney General, and Daniel F. De Vita, Assistant Attorney General of the State of New York, New York City, for Defendant.

MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBERT L. KRECHEVSKY, Chief Judge.

I.

ISSUE

The issue raised by the defendant's motion for summary judgment is a Chapter 7 trustee's entitlement to funds the debtor, while acting as a self-insurer, deposited as security for its obligations with the defendant, the New York State Workers' Compensation Board ("The Board"). The plaintiff-trustee

concedes that there are no genuine issues as to any material fact, but he does not seek summary judgment on his own behalf, although opposing the defendant's motion.

## II.

Robintech, Inc. ("Robintech"), the predecessor of Compudyne, Inc., the debtor (the "Debtor") in this Chapter 7 case, had been a self-insurer for workers' compensation claims in New York between 1977 and 1982. As required by The Board's form "Agreement and Undertaking of Employer to Pay Compensation as a Self Insurer" (the "Agreement") which Robintech signed in 1978, Robintech deposited $250,000 in securities (the "Deposit") with The Board "to secure [their] liability to pay the Compensation provided in the Workmen's Compensation Law....". Since 1981, as the number of employees was reduced, and as requested by Robintech or the Debtor, The Board reduced the Deposit. In 1989, The Board reduced the Deposit to $25,000 (now all cash) having previously received a report that all claims against Robintech had been closed and all awards paid.

The Debtor filed its Chapter 7 petition on December 31, 1991, and Anthony S. Novak, Esq. became trustee (the "Trustee") of the Debtor's estate. He requested that The Board deliver to him, as Trustee, the Deposit as property of the Debtor's estate. The Board refused, relying on New York statutes and regulations. They provide that 26 months after a self-insured status is terminated and all claims have been adjudicated and paid, to secure return of the Deposit The Board may accept from the employer a policy of insurance ("Release Policy"), in an amount to be determined by the Chair of The Board, as a guaranty that any further liability as may arise from prior injuries to workers will be covered. N.Y. WORK.COMP.LAW § 50(3) (West 1995); N.Y.COMP.CODES R. & REGS. tit.

12, § 315.5(a)(2) (West 1995). Neither the Debtor nor the Trustee has ever submitted a Release Policy to The Board.

## III.

The Trustee, in an amended complaint filed May 11, 1995 against Barbara Patton, Chairperson of The Board, seeks turnover of the Deposit pursuant to 11 U.S.C. § 542 [1]. Although not stated in the complaint, the Trustee, in papers filed in opposition to The Board's motion, alleges that after contacting numerous Connecticut and New York insurance companies, including those recommended by The Board, it is impossible for him to obtain a Release Policy. He also alleged that the Debtor, not The Board, receives the interest that accrues on the Deposit.[2]

The Board argues that the Trustee succeeds to no greater interest than that held by the Debtor at the time the bankruptcy petition was filed. *See, e.g., Musso v. New York State Higher Educ. Services Corp. (In re Royal Business School Inc.)*, 157 B.R. 932, 941–42 (Bankr.E.D.N.Y.1993). The Board cites the following bankruptcy court authority that a bankruptcy estate has no immediate possessory interest in deposits to assure payment of workers' compensation claims until conditions of deposit have been satisfied. *Cedar Rapids Meats, Inc. v. Hager (In re Cedar Rapids Meats, Inc.)*, 121 B.R. 562 (Bankr.N.D.Iowa 1990) (under Iowa law, escrow fund established with insurance commissioner prepetition by debtor to guarantee payment of workers' compensation claims was not property of debtor's estate where numerous unpaid claims pending; estate's interest was only in funds remaining after claims had been satisfied, with interest earned on fund accruing to fund); *Dolphin Titan Int'l, Inc. v. Gray & Co., Inc. (In re*

---

1. Section 542(a) requires, with exceptions not applicable here, that an entity holding "property that the trustee may use, sell, or lease ... shall deliver [such property] to the trustee...." 11 U.S.C. § 542(a).

2. N.Y.Comp.Codes R. & Regs. tit. 12, § 315.3(b) provides that:
   [i]nterest paid on the cash deposit will be regularly remitted to the self-insurer for whose account it is deposited so long as such self-insurer complies with the provisions of the Workers' Compensation Law and is not in default in the payment of compensation or other obligation under the Workers' Compensation Law.
   N.Y.COMP.CODES R. & REGS. tit. 12, § 315.3(b) (West 1995).

**6**

*Dolphin Titan Int'l, Inc.)*, 93 B.R. 508 (Bankr.S.D.Tex.1988) (same, where escrow fund created by agreement between debtor and insurance carrier); *McLean Trucking Co. v. Dept. of Indus. Relations (In re McLean Trucking Co.)*, 74 B.R. 820 (Bankr. W.D.N.C.1987) (automatic stay inapplicable to action against surety who posted bond to secure California self-insured debtor's workers' compensation obligations because bond was not property of the estate).

The Board also refers to the Agreement which provides that the Deposit is "to be held by the Chairman, Workmen's Compensation Board, *in trust* . . . to apply . . . to the payment of any compensation . . . for which [Robintech] may become liable. . . ." (emphasis added). The Board asserts that it may reopen old claims up to 18 years after the date of injury or up to eight years after the last payment of compensation, and that Robintech was last self-insured in 1982. The Board contends that the Deposit does not represent property of the estate; that the Deposit is held in trust by The Board as security for the Debtor's workers' compensation liability; and that the Trustee's claim against The Board for turnover of the Deposit should be dismissed.

The Trustee argues that none of the authorities cited by The Board concern New York law; that the Debtor's receipt of the interest on the Deposit recognizes the Debtor's ownership of the Deposit; and that The Board's requirement of a Release Policy in order for the Trustee to obtain possession of the Deposit imposes a condition impossible to satisfy. The Trustee contends these are all reasons why "equity mandate[s] the return of these funds to the estate so that all claims may be administered. . . ." *Trustee's Memorandum of Law* at 4.

The Board, in its motion papers, does not directly indicate when, without a Release Policy, it believes that the Debtor's estate will be entitled to receive the Deposit. In its statement of material uncontested facts, The Board asserts: "Since the debtor was last self-insured in 1982, the Board may still reopen old claims (up to eighteen years after the date of injury or up to eight years after the last payment of compensation)." The Board does not argue that since August 1986, when the Debtor submitted a sworn statement attesting to all outstanding liabilities for compensation and all pending claims for compensation, that there have been any further claims.

IV.

### CONCLUSION

The Debtor's estate has been pending for four years, and the conflict between reasonably satisfying the discretion vested in The Board and not unreasonably delaying distributions to creditors of the Debtor's insolvent estate needs to be resolved. The court will exercise its discretion and deny The Board's motion for summary judgment. The authorities cited by The Board do not present factual backgrounds comparable to that present in this matter. A plenary trial will afford the court a fuller factual foundation on which to base an informed judgment. *See* 10A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D, § 2728 (1983) ("an appraisal of the legal issues may lead a court to exercise its discretion and deny summary judgment in order to obtain the fuller factual foundation afforded by a plenary trial.").

The motion for summary judgment filed by the defendant is denied. It is

SO ORDERED.