■ In the Matter of METROPOLITAN CAREER INSTITUTE, INC., Doing Business as METROPOLITAN CAREER INSTITUTE, Appellant, v EDWARD V. REGAN, as Comptroller of the State of New York, et al., Respondents. [627 NYS2d 133] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Harris, J.), entered April 5, 1994 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Comptroller requiring petitioner to refund certain moneys received under the Tuition Assistance Program.

During the relevant time periods, petitioner was a private registered business school in New York City. It participated in the Tuition Assistance Program (hereinafter TAP) administered by respondent New York State Higher Education Services Corporation (hereinafter HESC) *(see,* Education Law §§ 652, 667, 5002). In order to be eligible for TAP, an institution such as petitioner was required to, *inter alia,* comply with

established student/teacher ratios for each course or curricula *(see,* 8 NYCRR 126.4 [a]). It was also required to comply with certain standards governing the licensing requirements for its faculty members *(see,* 8 NYCRR 126.6).

In accordance with the provisions of Education Law § 665 (3) (b), respondent Department of Audit and Control conducted an audit of TAP payments made to petitioner for, among other years, the 1988-1989 academic year. A preliminary audit report, issued in July 1990, and a working draft audit report, issued in July 1991, both found, *inter alia,* that petitioner's class sizes exceeded the approved student/teacher ratios and that petitioner was using unqualified teachers. Petitioner contested these findings. With respect to the question of student/teacher ratios, it argued that respondents were improperly relying on a September 25, 1989 directive issued by respondent Department of Education which pertained to the issue of class size. According to the terms of the directive, the maximum student to teacher ratio was not to be based on an average daily attendance record but, rather, on a particular course's attendance register (hereinafter the enrollment standard). Petitioner contended that the directive was imposing a standard different than that employed by respondents during the periods being audited. According to petitioner, for the periods at issue, respondents had determined teacher/student ratios based on an average daily standard.[1] Petitioner, therefore, requested a recalculation based on the prior standard. With respect to the question of teacher qualifications, petitioner responded with documentation that it claimed supported a finding that certain of the teachers in issue were properly certified or certifiable.

Ultimately, after consideration of petitioner's submissions, a final audit report was issued by Audit and Control which disallowed all $4,325,532 in TAP payments made to petitioner for 1988-1989 and 26 awards totaling $22,125 for the other years covered by the audit. Thereafter, by a conditional demand letter, HESC directed repayment of the funds. Petitioner then commenced this proceeding contending, *inter alia,* that Audit and Control's determination was arbitrary and capricious and that both it and HESC's demand for repayment should be annulled. Supreme Court dismissed the petition prompting this appeal.

---

1. With regard to the portion of the audit involving the 1988-1989 academic year, the parties do not dispute that inasmuch as it ran from July 1, 1988 through June 30, 1989, it was already completed by the time the September 1989 directive was issued *(see,* Education Law § 651 [5]).

One of the primary factors leading to the TAP disallowance was the finding that petitioner's class sizes exceeded the approved student/teacher ratios. The key issue is whether respondents applied the correct standard in measuring classroom overcrowding. Petitioner contends that respondents incorrectly applied the enrollment standard retroactively when they should have applied the average daily attendance standard.[2] Respondents, for their part, claim that they never applied the average daily attendance standard but that, prior to the enrollment standard set forth in the September 1989 directive, they applied a "multi-factor" approach. In addition, while respondents concede that the enrollment standard was indeed applied with respect to the preliminary and draft audit reports, they claim that the final audit report properly used the multi-factor approach.

The record does not support respondents' assertions. Accordingly, we annul the final audit report and conditional demand letter as arbitrary and capricious (cf., *Matter of Crown Bus. Inst. v New York State Dept. of Audit & Control,* 168 AD2d 843) and remit the matter to respondents for a redetermination consistent with this Court's decision. In reaching this conclusion, we note that not only does the record reveal that the enrollment standard was applied to the final audit report, but that respondents also did in fact apply the average daily attendance standard prior to the September 1989 directive and not the multi-factor approach as they contend.

Respondents aver that, after reviewing petitioner's attendance registers and the preliminary audit report, they then applied the "former" standard (the multi-factor standard) and still allegedly found that petitioner exceeded the approved student/teacher ratios. The final audit report, however, fails to reflect the application of this "former" standard or any figures or recalculations used in applying the "former" standard. Instead, in identical language to that contained in the draft audit report, the final audit report concluded that petitioner's courses exceeded the approved student/teacher ratios. In addition, the exact same dollar amount in violations were calculated under both reports, an unlikely occurrence had the two reports actually used two different methods for calculating student/teacher ratios. Based on the record before us, we

2. This, along with the question of the qualifications of certain of its teachers, was one of several arguments raised by petitioner in arguing for annulment of the final audit report and the conditional demand letter. Supreme Court rejected all of petitioner's claims. On appeal, petitioner has raised only these two issues.

conclude that respondents did apply the enrollment standard to the final audit.

Nor can we accept respondents' argument that the "former" standard that they applied prior to the September 1989 directive was the multi-factor approach as opposed to the average daily attendance standard. The self-serving averments of respondents in support of this claim are clearly contradicted by prior interdepartmental correspondences. The latter make no mention of the multi-factor approach, and consistently refer only to the use of an average daily attendance methodology in determining compliance with established student/teacher ratios. Further, the September 1989 directive makes no reference to the multi-factor approach but instead explicitly addresses the inapplicability of the average daily attendance standard. Thus, upon remittal, petitioner is entitled to have the average daily attendance standard applied to its final audit.

As a final matter, with respect to the determination regarding the qualifications of certain of petitioner's teachers, the record indicates, and respondents do not dispute this, that two of them, Ada Vega and Aurora Realubit, were in fact licensable.[3] They were, therefore, improperly included as disallowances on the final audit. With respect to the remaining teachers at issue, however, it cannot be said that the disallowances for lack of qualifications for these teachers was arbitrary and capricious (see, Matter of Royal Bus. School v New York State Dept. of Educ., 141 AD2d 170) and the conclusions as to those teachers should thus not be disturbed.

White, Casey, Peters and Spain, JJ., concur. Ordered that the judgment is modified, on the law, with costs to petitioner, by reversing so much thereof as dismissed the petition regarding disallowances for the 1988-1989 academic year based on student/teacher ratios and disallowances premised on the qualifications of Ada Vega and Aurora Realubit; final audit report and conditional demand letter annulled regarding said disallowances, petition granted to that extent and matter remitted to respondents for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

■ In the Matter of FRANCES E. DALMOLEN, Appellant, v

---

3. Supreme Court also accepted this argument but determined that because the TAP awards for the students taught by these teachers had already been disallowed for violation of the student/teacher ratio requirement, this issue did not impact upon the ultimate conclusion of the final audit report. In view of our conclusions with respect to the issue of student/teacher ratios, however, it is necessary to address this issue.