■ In the Matter of RUTH EVANS et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v BRIAN J. WING, as Acting Commissioner of New York State Department of Social Services, et al., Appellants, et al., Respondent. [716 NYS2d 269] —Judgment unanimously modified on the law and as modified affirmed without costs and matter remitted to respondents for further proceedings in accordance with the following Memorandum: Petitioners commenced this proceeding on behalf of themselves and all others similarly situated, challenging the legality and rationality of respondents' determination to set the personal needs allowance (PNA) at $50 per month for certain married participants in a joint Federal/State Medicaid program known as the Long Term Home Health Care Program (LTHHCP). The State respondents appeal from a judgment that annulled the PNA determination on the ground that it was not made "in compliance with relevant Federal statutes and policy" because the newly-established PNA of $50 per month was not a "reasonable amount to cover the maintenance needs of an LTHHCP participant living in the community with a spouse." Supreme Court directed respondents to reinstate the PNA of approximately $550 per month utilized prior to January 1, 1995 and further directed them to "re-budget all class members to reflect this reinstated personal income allowance from August 21, 1996 through to the present."

The court properly annulled the determination of respondents to set the PNA for LTHHCP participants living in the community with a spouse at $50 per month. The determination is inconsistent with Federal policy because the newly-established PNA of $50 per month is not "reasonable in amount" (42 USC § 1396a [q] [1] [A] [i]) to meet the actual personal needs and expenses of an LTHHCP participant who resides in the community with his or her spouse. Respondents conceded as much in their papers in opposition to petitioners' motion for summary judgment. Because a PNA of $50 per month does not cover the cost of maintaining the LTHHCP participant in the community, the unmet cost must be paid by the community spouse, thereby reducing the community spouse's income to an amount less than that provided by the spousal impoverishment provisions set forth in Social Services Law § 366-c.

The determination to set the PNA for LTHHCP participants at $50 per month also is irrational because it equally treats two dissimilar financial situations, namely that of a LTHHCP participant who is being cared for in the home while residing with a spouse, and that of a Medicaid recipient who is confined

in a nursing home while a spouse remains in the home. For the patient confined in a nursing home, the PNA of $50 per month need cover only clothing and other personal incidental expenses because the institutionalized spouse receives room and board as part of the nursing home care. In that situation, the non-patient spouse residing in the home enjoys the entire benefit of the community spouse allowance, undiminished by any expenses attributable to the maintenance and support of the institutionalized spouse. In contrast, where the patient spouse remains in the home, the non-patient spouse is relegated to the community spouse allowance, as barely augmented by the patient spouse's PNA of $50 per month. As conceded by respondents, the PNA of $50 per month is insufficient to cover the increased cost for food and shelter for a two-person as opposed to a one-person household.

The irrational determination of respondents to treat the disparate situations equally is in contrast to the policy in effect before January 1, 1995. Until then, respondents granted married nursing home patients a PNA of $50 per month, but allowed all LTHHCP participants, including those living with a community spouse, to retain a PNA in the amount of the Medicaid needs allowance for a one-person household in the community, about $550 per month. That policy accounted for the far lower out-of-pocket expenses experienced by nursing home residents, whose room and board is furnished as part of their medical care, in comparison to patients being cared for in the home, whose room and board and other living expenses must be paid by the couple.

The irrationality of the new State policy and its inconsistency with Federal law is established by the opinion letters of the Health Care Financing Administration (HCFA), the Federal agency that administers the Medicaid program. Those letters authorize States to grant the same PNA for nursing home residents and home-based recipients but require that a State in that instance "must demonstrate that this is a reasonable amount to cover the cost of the individual's maintenance needs in the community." HCFA reasons that, "unlike institutionalized individuals whose room and board are covered by Medicaid, the personal needs of the home and community-based services recipient must include a reasonable amount for food and shelter as well as for clothing." Because the newly-established PNA of $50 per month for married LTHHCP participants living in the community with a spouse is inadequate and unreasonable to meet those expenses of the LTHHCP participant, respondents' new policy fails to comply with

Federal requirements. The applicable Federal statutes do not specifically set a PNA for LTHHCP participants living with a community spouse. Consequently, it is proper to utilize the rational interpretation of the HCFA, the agency responsible for administering the statute (*see, Matter of Brown v Wing,* 93 NY2d 517, 524, citing *Chevron U.S.A. v Natural Resources Defense Council,* 467 US 837; *Matter of Waclawski v Axelrod,* 151 AD2d 977, 978).

We conclude, however, that the court erred in ordering respondents to reinstate the PNA to the pre-1995 level for petitioners and all other class members. In so doing, the court failed to take into consideration the fact that the incremental costs associated with increasing a household from one person to two persons for a married LTHHCP participant living in the community with a spouse may be less than the cost of maintaining a household for an LTHHCP participant living alone. The determination of the PNA amount must be made by respondents in the first instance, subject to further judicial review for legality and rationality. Therefore, we modify the judgment by vacating that part directing respondents to reinstate the PNA utilized prior to January 1, 1995 for petitioners and other members of the class, and we remit the matter to respondents to redetermine the amount of the PNA for petitioners and other members of the class for the period from August 21, 1996 to the present in a manner consistent with the decision of this Court (*see, Matter of Church v Wing,* 229 AD2d 1019, 1020; *Matter of Golf v New York State Dept. of Social Servs.,* 221 AD2d 997, *revd on other grounds* 91 NY2d 656; *Matter of Metropolitan Career Inst. v Regan,* 215 AD2d 982, 984; *Matter of Csanko v Perales,* 138 AD2d 703; *see generally, Matter of Association of Secretaries to Justices of Sup. & Surrogate's Cts. v Office of Ct. Admin.,* 75 NY2d 460, 476-477). (Appeal from Judgment of Supreme Court, Erie County, Doerr, J.H.O.—CPLR art 78.) Present—Green, J. P., Pine, Hayes, Hurlbutt and Kehoe, JJ.