OPINION OF THE COURT
John R. Tenney, J.
The plaintiff, Earl Moyer, was the successful bidder for the sanitation contract with the City of Little Falls for a five-year term commencing April 1, 1984. The bid provided for annual payments of $97,700. A factor which influenced the amount of the bid was the ability to dump refuse in a landfill area near the City of Little Falls. At the time of the contract, the actual rate for dumping at the Rose Valley Landfill was $1.50 per cubic yard. The city estimated that annual pickups would total 8,000 cubic feet.
*300 In December of 1985, the Rose Valley Landfill was closed by order of the New York State Department of Environmental Conservation (DEC). The only other DEC approved landfill facility available to plaintiff is the Mohawk Valley Sanitary Landfill located in Frankfort, New York.
On January 1, 1986, Mohawk Valley increased its rate from $2.50 to $3.50 per cubic yard. On July 1, 1986, the rate was increased to $5, and on November 1, 1986, it was increased again to $10 per cubic yard. There is no explanation for this outrageous acceleration other than an apparent gouging attempt by the landfill operators because of the monopoly position created by the actions of the State of New York. As stated in the stipulated facts: "Such a dramatic increase in the cost of waste disposal could not have been foreseen”.
Can such an unforeseeable factor be an excuse for nonperformance and a discharge of plaintiff from his obligations? Plaintiff contends that he should be discharged under the common-law doctrine of "impossibility of performance”.
The doctrine of "impossibility” has a long history in the law and has many facets. Originally, the doctrine was restricted to absolute inability to perform. (See generally, 6 Corbin, Contracts § 1320 et seq.) This approach has been softened somewhat in special situations to take into consideration the potential for injustice created by such an absolute doctrine: impossibility due to an act of government; and business impracticality rising to the level of legal impossibility. Plaintiff has the dual situation of a financially impossible situation indirectly resulting from the actions of a government agency.
In the marketplace, the Uniform Commercial Code (§ 2-615) anticipated such situations and provided for relief. "Increased cost alone does not excuse performance unless the rise in cost is due to some unforeseen contingency which alters the essential nature of the performance.” (UCC 2-615, Comment 4; emphasis added.) This theory has been .applied in noncommercial cases by New York courts under a different set of facts. However, such a provision suggests an underlying policy of the law to protect a contracting party from unforeseeable hardships.
In City of New York v Long Is. Airports Limousine Serv. Corp. (96 AD2d 998), defendant had agreed to pay the city a fee for issuing an operating franchise. Subsequently, a court held that the city had no power to deny a franchise to defendant. Therefore, since defendant did not require the *301 franchise, it was held unfair to require the payment agreed to by the contract which assumed a need found to be nonexistent. The court stated: "[T]he statutory changes have made the contract worthless to LIALS and also made performance of the contract vastly different from what could reasonably have been within the contemplation of the parties when the contract was made. Given these altered circumstances, it is clear that reasonable men would not have made the subject contract” (supra, p 999).
In City of New York v Local 333 Mar. Div., Intl. Longshoremen’s Assn. (79 AD2d 410) one of the defendants contracted to supply tugboat services to the city’s Sanitation Department. A portwide strike was called by defendant Local 333, making performance "impossible”. Nevertheless, Special Term upheld the contract and granted the city’s motion for summary judgment for damages. In reversing, the court, citing 18 Williston, Contracts § 1931 (3d ed), stated: " 'The important question is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. If so, the risk should not fairly be thrown upon the promisor.’ ” (79 AD2d, at pp 411, 412; see also, Ewing Co. v New York State Teachers’ Retirement Sys., 14 AD2d 113; Maple Farms v City School Dist., 76 Misc 2d 1080.)
On facts virtually identical to the instant case, a California court excused performance. In City of Vernon v City of Los Angeles (45 Cal 2d 710, 290 P2d 841), defendant agreed to allow plaintiff to discharge sewage into its disposal system. Subsequently, the system was adjudged to be a public nuisance requiring construction of new, and substantially more expensive, sewage facilities. The court held the agreement to be at an end stating: " 'since further use of the facilities contemplated by the parties would be unlawful and the use of new facilities * * * would be unreasonably excessive in cost, further performance under such contracts by [defendant] is excused’.” (45 Cal 2d, at p 719, 290 P2d, at p 846.)
Thus, there is a growing trend that performance should be excused (1) if governmental action or other contingencies create a substantially unjust situation totally outside contemplation of the parties and (2) which an experienced draftsman would not reasonably anticipate. In this instance, it is stipulated that the 666% price increase was not and could not have been within the contemplation of the parties. Such a massive *302 cost escalation is "excessive” as a matter of law and future performance by plaintiff must be excused.
Since the sanitary landfill problem was and is of major public concern, enforcement efforts by DEC were foreseeable. However, the creation of a monopoly enterprise was not. It is unreasonable and unfair to require the plaintiff to bear the burden of DEC actions where those actions impact in such a drastic way on the people of the city, county and State. The "fallout” from DEC action is a public concern requiring a public solution. By its actions it has created a condition which gives a private party control of a publicly necessary facility. The parties could not anticipate such a result.
The motion for summary judgment should be granted in favor of the plaintiff.