■ In the Matter of A&S TRANSPORTATION Co., Appellant, v COUNTY OF NASSAU et al., Respondents.—In a proceeding pursuant to CPLR article 78, inter alia, to review a determina-

tion of the County of Nassau dated May 1, 1989, awarding a competitively bid sewage sludge disposal contract to the respondent National Seatrade, Inc., the petitioner appeals (1) from so much of an order of the Supreme Court, Nassau County (Roncallo, J.), dated June 2, 1989, as, upon reargument, adhered to its original determination in a decision dated May 26, 1989, and (2) from an order and judgment (one paper), of the same court, dated June 16, 1989, which denied the petitioner's motion for a preliminary injunction and, upon the respondents' motion, dismissed the proceeding.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the order and judgment is affirmed; and it is further,

Ordered that the respondents, appearing separately and filing separate briefs, are awarded one bill of costs.

The appeal from the order must be dismissed because no appeal lies from an order made upon reargument which adheres to an original determination in a decision (see, Stockfield v Stockfield, 131 AD2d 834), and no appeal lies as of right from an intermediate order in a proceeding pursuant to CPLR article 78 (CPLR 5701 [b] [1]). Moreover, the order was superseded by the order and judgment (see, Matter of Aho, 39 NY2d 241, 248). The issues raised an appeal from the order are brought up for review and have been considered on the appeal from the order and judgment (CPLR 5501 [a]).

The petitioner A&S Transportation Co. (hereinafter A&S), submitted a bid to dispose of Nassau County's sewage sludge at sea, which bid was nearly $3,000,000 lower than the bid of National Seatrade, Inc. (hereinafter NSI), to whom the contract was awarded. However, despite the county's express "Instruction to Bidders" that conditional bids would not be accepted, A&S included in its bid a provision that if a revision of standards of the United States Environmental Protection Agency, expected imminently, prevented A&S from discharging the volume of sludge required by the contract "within the dumping time available to it", and if a renegotiation of the contract "on mutually agreeable terms" proved unfeasible, A&S reserved the right to terminate the agreement and have its performance bond returned on the basis of impossibility of performance.

The county's final contract proposal, which spanned the years 1989 through 1992, decreed a maximum sludge discharge rate at the "106-Mile" ocean dumping site of 7,200

gallons per minute (hereinafter gpm) at a speed of six knots, although these rates were subject to the Ocean Dumping Ban of 1988, as well as an ocean-dumping permit to be issued by the EPA on or about August 14, 1989, some two months after the expiration of its current sludge-disposal contract. The terms of the contract were generally subject to governmental regulations, and the county could void the contract, and pay the contractor only for work actually performed, should the EPA rescind the ocean-dumping permit. Since the EPA's interim draft permit had mandated the unusually low discharge rate in effect during the bidding period of only 2,694 gallons per minute at six knots, the county provided for an additional allowance of $500,000 to compensate "for the excess time that must be spent by the waste transporter at the 106-Mile Site * * * due to a decrease in allowable discharge rate below the 7,200 gpm specified in this contract". In the alternative, the county recognized that if it was not successful in convincing the EPA to increase its current dumping rates, which it was actively endeavoring to do, the EPA's conditions could "form the basis for a possible renegotiation of the terms of [the] contract". The transporter was obliged to warrant that it could perform the work called for by the contract, that it would assume full responsibility for the work's completion, and that it would post security for performance equal to 100% of the amount bid.

On or about May 1, 1989, sludge disposal contract No. S30510L was awarded by the county to NSI "as the lowest responsible bidder for the amount of $17,511,265". The lower bid of A&S, in the amount of $14,588,572, was rejected on the ground that the added language in A&S's bid submission constituted a "material variance" from the terms of the county's advertised proposal, in that "[t]he reserved ability to terminate the contract would adversely [a]ffect the interests of the County, and would place the second lowest bidder at a competitive disadvantage". The Supreme Court confirmed the administrative determination, concluding that it had a "rational basis".

On appeal, A&S contends that the language added to its bid submission merely stated black-letter law as to impossibility of performance, so that the county's rejection of its bid on the ground that it constituted a "material variance" from the bid specifications was incorrect as a matter of law. It also alleges that the county's failure to publish precise bid specifications necessitated the "clarification" contained in its bid submission,

and mandated at the very least that the county seek new bids. The petitioner's contentions are without merit.

The language added by A&S to its bid submission did *not* constitute a simple statement of black-letter law as to impossibility of performance, because A&S clearly reserved to itself the right to decide when it considered performance to be "impossible". Therefore, regardless of the objective difficulties inherent in disposing of the county's sludge at the slow rates imposed by the EPA's draft permit, A&S could subjectively determine when "impossibility" should obligate the county to renegotiate the terms of its remuneration or permit A&S to terminate the agreement *(cf., Beagle v Parillo,* 116 AD2d 856). Moreover, the law of impossibility provides that performance of a contract will be excused if such performance is rendered impossible by intervening governmental activities, but only if those activities are unforeseeable *(see, Metpath, Inc. v Birmingham Fire Ins. Co.,* 86 AD2d 407; *Moyer v City of Little Falls,* 134 Misc 2d 299). In contrast, when a governmental action is foreseeable, a contractor may not invoke "impossibility" to excuse performance *(see, Crown Embroidery Works v Gordon,* 190 App Div 472). In the instant case, actions by the EPA to restrict sludge discharge rates had already been taken prior to the submission of bids, so that A&S cannot claim that the governmentally imposed decreased rates guarded against by its addendum to its bid submission were "unforeseeable."

In any event, the language added by A&S violated the literal requirements of the county's bid specifications that "[c]onditional bids will not be accepted" *(Le Cesse Bros. Contr. v Town Bd.,* 62 AD2d 28, *affd* 46 NY2d 960). A governmental agency "has the right to determine whether a variance from bid specifications is material * * * and that determination must be upheld by the courts if supported by any rational basis" *(Matter of Varsity Tr. v Board of Educ.,* 130 AD2d 581, 582). The Supreme Court therefore properly confirmed the county's determination as supported by a rational basis *(see,* CPLR 7803 [3]).

Finally, the bid specifications advertised by the county provided for a maximum expected sludge discharge rate of 7,200 gpm at six knots, while decreeing that any lower rates as well as other standards promulgated by the EPA would control. These specifications were as precise as possible under the circumstances. Mangano, J. P., Bracken, Kunzeman and Harwood, JJ., concur.