In the Matter of TTS, INC., Debtor.

TTS, INC., Appellant,

v.

CITIBANK, N.A.

and

Jarvis J. Slade, Appellees.

Civ. A. No. 91–222–RRM.
Adv. No. 89–90.

United States District Court,
D. Delaware.

March 16, 1993.

Thomas Ambro, Richards, Layton & Finger, Wilmington, DE, and Stephen W. Armstrong, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, of counsel, for appellant.

Peter J. Walsh, Bayard, Handelman & Murdoch, P.A., Wilmington, DE, for appellees.

## MEMORANDUM OPINION

McKELVIE, District Judge.

In this appeal from the Bankruptcy Court, the predominant issue is whether funds which the debtor, TTS, Inc., had placed in escrow for the benefit of Jarvis Slade, a former employee, are property of the debtor's estate under § 541 of the Bankruptcy Code. The Bankruptcy Court granted summary judgment for Slade, holding that the escrow funds were not property of the debtor's estate and that the escrow agreement was not an executory contract. *In re TTS, Inc.*, 125 B.R. 411 (Bankr.D.Del.1991). TTS has appealed and moved for summary judgment on its own behalf. For the reasons set out below, the Court will affirm the Bankruptcy Court's Order.

■ On an appeal from a bankruptcy court, a district court exercises plenary review over the bankruptcy judge's legal conclusions and reviews that judge's factual findings under the "clearly erroneous" standard. *See Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 38–39 (3d Cir.1989); *Universal Minerals Inc. v. C.A. Hughes & Co.*, 669 F.2d 98 (3d Cir.1981).

Where there are no genuine issues of material fact in dispute and both parties move for summary judgment, the court must determine whether either party is entitled to judgment as a matter of law. *See Manetas v. International Petroleum Carriers, Inc.*, 541 F.2d 408, 413 (3d Cir.1976). Because the Court finds after review of the pleadings, the affidavits, and the agreements between the parties that the material facts in this case are not in dispute, the Court further finds that summary judgment is appropriate in this appeal.

TTS, formerly known as Computer Investors Group, Inc., is a New York corporation. On October 13, 1975, Jarvis Slade, a New York merchant banker, began working for TTS as its president. The parties entered into an employment agreement under which TTS would pay Slade $45,000 per year in direct compensation and $25,000 per

year in "deferred compensation" on terms to be agreed upon by the parties.

On December 22, 1975, the parties entered into a letter agreement and an escrow agreement detailing the terms of the "deferred compensation." These two agreements obligated TTS to deposit $6,250 into an escrow account for every three months of Slade's employment by TTS. The parties designated Citibank as the escrow agent. The parties authorized Citibank to make specific investments with the escrow funds, and, under joint supervision of TTS and Slade, Citibank could make other investments.

The letter agreement contained the following conditions for the payment of the funds from the escrow account: (1) Slade had to comply with all the terms of the employment contracts with TTS; (2) Slade would not compete with TTS for a period of five years after entering the employment agreement; and, (3) while working for TTS, and at any time thereafter, Slade would provide TTS with consulting advice upon TTS's request.

The escrow agreement also detailed the circumstances under which the escrow agent would disburse the escrow funds to Slade. The funds would be paid out after either the escrow agent received an official certificate of Slade's death, or Slade certified to the escrow agent that he had retired from active business.

The escrow agreement also provided that TTS would be entitled to receive funds out of the escrow account only if Slade were to breach any of the conditions of the Letter Agreement. TTS would be entitled only to an amount that reflected its actual damages resulting from such a breach.

Slade stopped working for TTS on September 20, 1976. At that time, TTS had paid a total of $25,000 into the escrow account. The parties then entered into a Consulting Agreement under which Slade was to provide specific consulting services to TTS for two years. TTS was no longer liable to pay money into the escrow account. While the investments in the escrow account could be jointly supervised by Slade and TTS, it is undisputed that Slade made all of the investment decisions. As of April 30, 1990, the balance in the escrow fund was $462,003.32.

On July 14, 1989, TTS filed a Chapter 11 petition. TTS ceased business operations in December, 1989. A liquidating plan was confirmed on December 5, 1990.

In 1989, after filing its Chapter 11 petition, TTS sought to compel Citibank to turn over those funds in the escrow account to TTS's estate. Both parties moved for summary judgment and the Bankruptcy Judge granted Slade's motion.

## I. Is the escrow account property of the estate under § 541 of the Bankruptcy Code?

The first issue for consideration is whether the funds in the escrow account are property of TTS's estate under § 541(a) of the Bankruptcy Code. Under § 541(a) of the Bankruptcy Code, filing a petition for bankruptcy creates a bankruptcy estate which comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, under § 541(d), when a debtor holds only legal title to property with beneficial interests being held by another party, that property "is included in the bankrupt's estate only to the extent of the debtor's legal title to the property and not to the extent of any interest in the property that the debtor does not hold." *Universal Bonding v. Gittens & Sprinkle Enterprises, Inc.*, 960 F.2d 366, 371 (3d Cir.1992). Section 541 does not give the debtor any greater rights to property than the debtor had before filing for Chapter 11. "To the extent that an interest is limited in the hands of the debtor, it is, therefore, equally limited in the hands of the estate." 4 Collier on Bankruptcy 541.01 (15th ed. 1983). "[T]he rule is elementary that the estate succeeds to only the title and rights in the property that the debtor possessed." *Universal Bonding*, 960 F.2d at 373 (quoting *Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 968 (5th Cir.1983)). The debtor's "right to those monies did not change the

moment that [the debtor] filed its bankruptcy petition." *Id.*

▪ This Court must consider what rights each party had under the escrow agreement at the time TTS filed for bankruptcy. "Although section 541 defines property of the estate, we must look to state law to determine if a property right exists and to stake out its dimensions." *In re Nejberger*, 934 F.2d 1300, 1302 (3d Cir. 1991) (citing *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979) and *In re Roach*, 824 F.2d 1370, 1374 (3d Cir.1987)). "The principal question is whether the substance of the right or interest in question brings it within the scope of estate property under the Bankruptcy Act." *Id.* As the escrow agreement was entered into in New York, this Court should apply New York law to determine each party's interests in the escrow account.

▪ Under New York law, legal title to an escrow remains with the grantor until the occurrence of a condition specified in the agreement. *See Matter of O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 667 (Bankr.S.D.N.Y.1985). However, as noted by the *O.P.M.* court:

> [T]he deposit of property placed in escrow 'creates in the grantee such an equitable interest in the property that upon full performance of the conditions according to the escrow agreement, title will vest at once in him. Hence, although pending full performance of the conditions, the legal title remains in the grantor and is subject to the lien of a judgment against him to the extent of his interest therein, it has been held that such lien, obtained with notice of the escrow agreement, is subject to the equity of the grantee.'

*Matter of O.P.M. Leasing Services, Inc.*, 46 B.R. at 667 (quoting 28 Am.Jur.2d Escrow § 10 (1964)). Thus, under New York law, TTS clearly holds legal title to the escrow account subject to the equitable interest held by Slade.

▪ While it is clear that Slade has an equitable interest in the escrow account, it is possible TTS also could have an equitable interest in the account. *See Press v. Marvalan Industries, Inc.*, 422 F.Supp. 346, 349 (S.D.N.Y.1976) (under New York law, incidents of ownership remain in person depositing property in escrow until conditions of escrow agreement are fulfilled) (citing *Alexander v. Quality Leather Goods Corp.*, 150 Misc. 577, 269 N.Y.S. 499 (Sup.Ct.1934) (seller who deposits corporate shares in escrow to await payment of promissory notes is entitled to all rights of a shareholder)). This Court, therefore, must now consider the escrow agreement to determine the extent of each party's interest in the escrow account.

Initially, in construing the escrow agreement, this Court notes that the undisputed purpose of the agreement was to provide "deferred compensation" from TTS's predecessor to Slade. Thus, it is clear that the original intent of the agreement was that the parties established the escrow account to provide a mechanism to pay deferred compensation to Slade for services rendered, contingent on certain limited conditions.

TTS's rights to the funds in the escrow account were rather limited, not only at the time of the filing of the bankruptcy petition, but also throughout the life of the escrow agreement. TTS had the right to be paid damages out of the funds in the escrow account for any breach of the conditions of the Letter Agreement. Thus, if Slade had breached his employment agreement, had violated the non-compete clause, or had failed to provide consulting advice when requested by TTS, then TTS would have a right to be paid damages out of the escrow account. Notwithstanding any control which TTS had over the investments in the escrow account, the extent of TTS's interest in the funds in the account is limited to potential damages resulting from a breach by Slade.

TTS argues that the degree of control it exercises over the escrow account under the escrow agreement demonstrates that TTS has an equitable interest in the account. However, an equitable interest in the account does not necessarily arise from

having some ability to control the account. TTS's only equitable interest in the funds in the account is its right to damages in the event of a breach by Slade. TTS's arguments relating to tax law are similarly irrelevant with respect to its equitable interest in the account.

Slade's interest in the account, however, is significantly greater. Slade satisfied all of his material obligations to TTS by performing the services required of him, by remaining available for consulting advice, and by not competing against TTS. Slade has the right to be paid all of the funds in the account upon certification of his retirement or death. That right vested at the time the parties executed the agreement. It is undisputed that, prior to the filing of the bankruptcy petition, had the escrow agent received certification of Slade's death or retirement then Slade or his estate would have received the funds in the account. The escrow agreement does not contain any provision which would cause the account to revert to TTS in the event that such a certification was never made.

TTS contends that Slade's interest in the account was a contingent interest that would not vest until he fulfilled the certification requirement. TTS argues that § 541 has now cut off Slade's rights to the escrow account because he did not fulfill the certification requirement prior to the time TTS filed for bankruptcy, and thus his contingent rights never vested and can never vest now. Essentially, TTS seeks to obtain greater rights to the escrow account after the creation of the estate under § 541 than it had before filing for bankruptcy. However, under § 541 a debtor's estate has no greater interest in property after filing for bankruptcy than it had before filing. *Universal Bonding,* 960 F.2d at 372.

TTS claims that Slade's interest could be cut off because his interest would not vest until after the escrow agent receives certification of his death or retirement. The Bankruptcy Judge termed the certification requirement "an administrative, not a material requirement of the escrow agreement." *In re TTS, Inc.,* 125 B.R. at 415. However appropriate that characterization,

obtaining the certification is Slade's last obligation before Slade's "legal" title to the escrow account can be perfected under New York law. *See Matter of O.P.M. Leasing Services, Inc.,* 46 B.R. at 667. It is not a requirement, as TTS contends, that must be fulfilled before Slade's "equitable" interest in the account vests. Thus, at the time of the filing of the bankruptcy petition, under New York law TTS had legal title to the escrow account and Slade had a vested equitable interest in the escrow account. Under § 541, therefore, TTS's estate has bare legal title to the escrow account subject to Slade's vested equitable interest in the account. At most, assuming *arguendo* that it is possible that TTS could still request consulting services from Slade and Slade were to refuse, TTS's estate has a contingent right to damages out of the escrow account.

TTS also argues that paragraph 15 of the escrow agreement renders the escrow account property of the estate. Paragraph 15 provides, in pertinent part:

> The respective interests of Mr. Slade and the Company in the Funds shall not be subject to any claim of any creditor, nor shall Mr. Slade or the Company have any right to alienate, hypothecate, assign or transfer his, or its, interest, except by way of transfer upon death or by operation of law.

TTS contends that this provision, in conjunction with § 541 of the Bankruptcy Code, requires that the escrow account now be considered transferred back to TTS's estate "by operation of law." The Court rejects this argument. As discussed above, § 541 can provide the debtor's estate no greater interest in property after filing for bankruptcy than the debtor had prior to filing. Therefore, "by operation of" § 541 TTS's estate has legal title to the escrow account subject to Slade's vested interest, which is exactly what TTS held before filing for bankruptcy.

■ TTS's estate is not entitled to a "turnover" of the funds in the account. Turning the funds over to TTS's estate would amount to an undeserved windfall for the estate of the product of Slade's

work and investments over the life of the escrow account. Slade earned the initial $25,000 which TTS deposited in the escrow account, and Slade directed the investments which increased the value of the escrow account to $462,000. Once Slade certifies his retirement or the escrow agent receives certification of Slade's death, legal title to the account will vest in Slade.

## II. Is the escrow agreement an executory contract?

■ TTS contends that the escrow agreement is an executory contract which can be rejected under § 365 of the Bankruptcy Code. Because the Court finds that the escrow account is not property of the estate, this argument appears to be irrelevant. However, the Court will assume for the sake of argument that the estate could reject the agreement if it were an executory contract.

■ An executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v. National Fuel Gas Distribution Corporation*, 872 F.2d 36, 39 (3d Cir.1989) (quoting Countryman, *Executory Contracts in Bankruptcy, Part 1*, 57 Minn.L.Rev. 439, 460 (1973)). Section 365 provides that the debtor can reject executory contracts subject to court approval. 11 U.S.C. § 365.

TTS argues that each party has several continuing obligations under the escrow agreement. TTS claims that it has the following three obligations: (1) it must pay the taxes on the escrow account; (2) it must pay the fees and expenses of the escrow agent; and, (3) it has an ongoing duty to oversee and consent to all investment decisions of the escrow agent. TTS argues that Slade has two obligations remaining under the escrow agreement: (1) to continue to provide consulting advice to TTS upon request; and, (2) certification of death or retirement to the escrow agent.

The obligations regarding the payment of taxes arise out of the tax laws, not the escrow agreement. The payment of the fees and expenses of the escrow agent is made from the escrow account. TTS's duty with regard to certain investments is as follows: "[T]he escrow agent may make investments in such other securities as may be designated in writing form time to time jointly by [TTS] and Slade." (¶ 2 of the escrow agreement). As noted by the Bankruptcy Judge, TTS is under no obligation to consent to such investments, and its failure to consent could not be deemed a material breach of the escrow agreement. *See In re TTS, Inc.*, 125 B.R. at 415. Slade's obligations regarding certification to the escrow agent before the escrow account is paid out is not a "material" obligation with respect to TTS. Slade's failure to so certify consequently would not constitute a material breach of the escrow agreement which would entitle TTS to recover the escrow account.

Of all the obligations remaining under the escrow agreement, only the consulting requirement appears in any way material to the purpose of the escrow agreement. The "material" obligations under the escrow agreement include all obligations regarding the payment of the funds by TTS into the escrow account and the provision of services and compliance with the conditions of the employment agreement by Slade. TTS fulfilled its material obligations by paying the funds into the account in 1975 and 1976. Slade fulfilled his material obligations by working for TTS and complying with the terms of the employment and consulting agreements. Assuming *arguendo* that Slade's obligation to provide continued consulting services still exists, even after TTS has filed for a liquidating bankruptcy and ceased business operations, only one party still has a material obligation under the terms of the escrow agreement. Thus, because TTS has fulfilled all of its material obligations under the agreement, and because Slade fulfilled the majority of his material obligations to TTS under the agreement, the escrow agreement is not an executory contract which can be rejected under 11 U.S.C.

§ 365. *See Sharon Steel Corp.*, 872 F.2d at 39.

For the foregoing reasons, the decision of the Bankruptcy Court granting summary judgment for Slade is hereby AFFIRMED.

The Court will enter an Order implementing this decision.